**IN THE U.S. DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLATNA DIVISION**

| | | |
|---|---|---|
| VELEKA WILKINS, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>vs.<br><br>MOOVE CARS MOBILITY USA, CORP.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No.<br>1:26-cv-0627<br><br>**JURY TRIAL DEMANDED** |

**AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT**

This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff Veleka Wilkins ("Plaintiff"), individually, and on behalf of all similarly situated persons employed by Defendant Moove Cars Mobility USA, Corp. ("Defendant" or "Moove") at its 1130 Oakleigh Drive, East Point, Georgia 30344 location (the "Worksite"), arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and for breach of contract. Plaintiff also alleges violations arising under the Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. §§ 2101 *et seq.*, for Defendant's failure to provide at least sixty days written notice before its mass layoff and closing its facility on February 10, 2026.

Plaintiffs allege as follows:

## BACKGROUND

1. Plaintiffs were employed by Defendant as rideshare drivers at its Worksite ("Drivers") transporting riders ("Riders") throughout the metro Atlanta area using Defendant's fleet of electric vehicles ("EV"). Riders are connected with Drivers through Uber or a similar ride sharing app.

2. Defendant agreed to pay Drivers an hourly rate for all hours worked, but uniformly excluded time Plaintiff and those similarly situated spent waiting at Defendant's facility for an EV to become available for use, waiting at EV charging stations, or waiting in between rides during their assigned shift.

3. Drivers only got paid for the hours that they spent driving passengers not for the total amount of time they worked including time spent waiting for Defendant to make a vehicle available and charging vehicles, the time between rides, the time to drop the vehicle back at the facility after the last passenger or performing non-drive work duties for Defendant during their assigned work shift.

4. Defendant required Drivers to be on-call and fully available during their designated shifts in case a vehicle became available for their use.

5. Defendant routinely retained a portion of Driver's tips that passengers paid to the Driver through the rideshare app which Moove told Drivers they would receive.

6. Congress enacted the FLSA to protect workers' rights and ensure fair compensation in the workplace, contributing to a more equitable labor market in the United States. *See* 29 U.S.C. §§ 201, *et seq*.

7. Defendant also contractually agreed to provide Drivers with full-time hours entitling them to employer-provided benefits such as health insurance. But, Defendant routinely did not have vehicles available for Plaintiff and those similarly situated to perform their work duties which amounted to Drivers being less than full-time status disqualifying them from receiving employer-provided benefits.

8. Defendant agreed to pay employees performing work as Drivers an hourly rate for all hours worked but failed to pay them for all hours worked.

9. The wait-time Defendant willfully and uniformly excluded from the hours Plaintiff and those similarly situated Drivers worked is compensable worked time. 29 C.F.R. §§ 785.14, 785.15.

10. Accordingly, Defendant failed to pay the federal minimum wage, in violation of 29 U.S.C. § 206(a)(1)(C), and the difference between minimum wage and the contractually agreed upon hourly rate for all hours worked to Plaintiff and those similarly situated for unpaid work hours.

11. Similarly, Defendant failed to pay overtime compensation to Plaintiff and those similarly situated for each hour worked over 40 in a workweek, in violation of 29 U.S.C. § 207.

12. Defendant did not pay Drivers all tips that passengers paid through the Uber app as a gratuity to the Drivers.

13. Defendant closed the Worksite on February 10, 2026, preventing Plaintiff and those similarly situated from being able to work past that date.

14. Defendant sent a notice to its employees on February 10, 2026, purporting to terminate employment on April 10, 2026.

15. But, Defendant's closure of the Worksite on February 10, 2026, constituted a mass layoff of employees who worked at the Worksite within the meaning of 29 U.S.C. § 2101(a), resulting in employment loss for Plaintiff and similarly situated employees.

16. Defendant failed to provide at least sixty days' written notice to Plaintiff and those similarly situated Drivers who worked at the Worksite up until February 10, 2026, prior to not having work for those Drivers including Plaintiff.

17. Defendant's February 10, 2026 notice was deficient as it did not meet the requirements of 29 U.S.C. § 2102(a).

18. Defendant did not pay Plaintiff or other similarly situated Drivers who worked up until February 10, 2026, their wages after that date.

## JURISDICTION AND VENUE

19. This Court has original jurisdiction over this action pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

20. Venue is proper in the United States District Court for the Northern District of Georgia, Atlanta division pursuant to 28 U.S.C. § 1391(b)(2) because Defendant is located and conducts business in the District, and many of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

21. Plaintiff Veleka Wilkins is a resident of Atlanta, Georgia. She has worked for Defendant as a driver from May 2025 to the present.

22. Plaintiff brings this lawsuit on her own behalf and on behalf of all other Drivers who are currently or were formerly employed by Defendant during the relevant period.

23. Defendant is a Delaware for-profit corporation registered to conduct business within the state of Georgia primarily engaged in the business of transporting people through ride share services that involve calling for a vehicle and a driver to take an individual to a place or places and at all relevant times employed 100 or more employees within the meaning of 29 U.S.C. § 2101(a)(1).

24. At all relevant times, Defendant operated a "single site of employment" within the meaning of 29 U.S.C. § 2103(a)(3) at 1130 Oakleigh Drive, East Point, Georgia.

25. Defendant describes itself as providing sustainable, ecofriendly transit services for passengers in the metro Atlanta area, as one of its locations at least until February 10, 2026, through its hybrid and electric vehicle fleets. Defendant's principal office in Georgia is located at 260 Peachtree Street NW, Atlanta, Georgia 30303.

26. Defendant's Georgia registered agent is Incorporating Services, Ltd.,1130 Oakleigh Drive, East Point, Georgia 30344.

## FACTUAL ALLEGATIONS

27. During all periods relevant to this litigation, Defendant's annual sales exceeded $500,000 and it had more than two employees such that the FLSA applies in this case on an enterprise basis.

28. Defendant began operating in Atlanta in mid-2024 employing dozens of Drivers at all times relevant to this lawsuit and employing more than 200 Drivers since beginning operations in 2024, who provided rideshare transportation services utilizing Defendant's EV fleet to Riders around metro Atlanta.

29. Defendant hired Plaintiff promising to pay her an hourly rate for all hours worked plus tips.

30. Defendant employed its other Drivers in a similar manner.

31. Similar to how Defendant paid Plaintiff, Defendant has not paid its other Drivers the promised compensation or required FLSA wages.

32. Defendant routinely required Drivers to wait at the Defendant's facility until an EV became available to use without counting the time waiting as compensable time. Further, Defendant did not compensate Drivers with the time spent charging the EV at charging stations or the time spent waiting for the next ride.

33. Riders using Defendant's rideshare platform are provided the opportunity to add a gratuity for their Driver through the mobile application at the conclusion of the ride.

34. Upon information and belief, Defendant retains a portion of the gratuities paid by Riders through the platform before remitting compensation to Drivers. Defendant does not disclose to Drivers that it deducts, offsets, or otherwise reduces Rider-paid gratuities prior to payment. As a result, Plaintiff and similarly situated Drivers did not receive the full amount of tips paid by Riders on their behalf.

35. Defendant's compensation and payment structure for Drivers is centrally administered and uniformly applied. The practice of retaining, diverting, or failing to remit the full amount of Rider-paid gratuities and not counting hours

waiting for an EV, charging an EV or waiting for the next ride was implemented pursuant to Defendant's common compensation policies and applied to Plaintiff and collective and class members in the same manner.

36. By not paying the Drivers for wait time and depriving them and their families of their earnings, Defendant increased its profits by stealing from its employees.

37. Drivers were not paid an overtime premium for hours worked over 40 in a workweek, which routinely occurred.

38. Defendant also failed to provide full-time work, or allow Drivers to file for partial unemployment, when fleet vehicles were unavailable amounting to Drivers not qualifying for full-time benefits or promised wages.

39. Employees have complained to Defendant's management about not being paid for all hours or for overtime.

40. In addition, Plaintiff notified numerous members of Defendant's management that Defendant was stealing wages and not complying with its contractual obligations or federal law.

41. On February 9, 2026, Defendant was properly served with the Summons and Notice in this case.

42. On February 10, 2026, Defendant filed with the Georgia Office of Workforce Development a notice that it would be permanently terminating 83 employees employed at the Worksite.

43. The same day that notice was provided to the State, Moove emailed Drivers employed as of February 10, 2026 that the Worksite would be closed and that their employment would be permanently terminated as of April 10, 2026.

44. However, Defendant closed the Worksite on February 10, 2026, preventing Drivers from performing any work for Defendant. Defendant sent Drivers employed on February 10, 2026, a severance offer which requested the Driver release claims against Defendant in exchange for a payment that was typically less than $2,000.

45. In return for this minimal severance payment, which is but a small fraction of sixty-days' worth of pay, the Employee had to agree to release most, if not all, claims that could legally be released.

46. The Release further sought to gain an admission to coerce workers into agreeing that they reported all hours and received all pay.

47. The Notice and Release do not make clear, regardless of the Release being signed or not, whether the employee would be paid his or her wages between the closure on February 10th and the alleged date of termination on April 10th, or if

employees would qualify for unemployment before April 10, 2026, since Defendant deemed them employed until then despite the Worksite being closed.

48. Of the 83 employees Defendant will terminate as a result of it closing the Worksite, over half of them only had 10 days – February 20, 2026 – to sign the Release.

49. Neither the Notice nor the Release disclosed the present litigation, that putative collective and class members could potentially forfeit their right to participate in this case by signing the Release, or other amounts the employee might be forfeiting by signing the Release.

50. To the extent Defendant provided any layoff notice, such notice was legally deficient because it:

(a) Failed to provide 60 full days' notice;

(b) Failed to provide expected separation dates;

(c) Failed to provide required contact information; and/or

(d) Failed to comply with 20 C.F.R. § 639.7.

51. The Worksite closure was not caused by unforeseeable business circumstances, a faltering company seeking capital, or a natural disaster within the meaning of 29 U.S.C. § 2102(b).

52. Defendant acted intentionally, willfully, and/or with reckless disregard of its obligations under the WARN Act when it gave a proposed WARN Act notice on the same day it closed the Worksite.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

53. Plaintiffs re-allege and incorporate by reference the above paragraphs 1 through 52 as if fully set forth herein.

54. Pursuant to Section 16(b) of the FLSA, Plaintiff brings this action individually and on behalf of all other individuals similarly situated. 29 U.S.C. § 216(b). Members of the proposed collective were employed by Defendant within the meaning of the FLSA, as Drivers who provided rideshare transportation services to Riders around metro Atlanta.

55. The proposed collective is defined as follows:

> All persons who worked for Defendant as Drivers of Defendant's fleet of vehicles at any time within three years prior to the commencement of this action ("the Collective").

56. Plaintiff has consented in writing to be a part of this action pursuant to 29 U.S.C. § 216(b) and her consent form is attached as Exhibit A.

57. As this case proceeds, additional individuals have already and will continue to file consent forms and join the FLSA Collective Action as opt-in plaintiffs.

58. Plaintiff estimates the size of the proposed Collective to be more than 200 Drivers. The precise size of the proposed Collective can be easily ascertained from Defendant's records.

59. With respect to this case, a collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The class of employees on behalf of whom Plaintiff brings this collective action (a) have been or are employed as in the same or similar positions as Drivers at the same Worksite; (b) they were or are subject to the same or similar unlawful practices and/or policies of not paying for certain hours worked, not properly paying overtime, and failing to remit the full amount of Rider-paid gratuities; (c) their claims are based upon the same factual and legal theories; and (d) the payroll records needed to determine the extent of the violations and amount of damages are the same among all potential Collective members.

60. The employment relationship between Defendant and every Collective member, including named Plaintiff, is the same and differ only by the individual's name, exact number of hours worked each week, and rate of pay.

61. The key issues – the extent to which Defendant failed to pay Drivers (a) for time spent waiting or performing work such as charging vehicles that was not compensated, (b) for the full amount of Rider-paid gratuities, (c) for all

overtime hours based on the proper overtime premium, (d) and the failure to pay for hours worked at the promised rate of pay do not vary among the Collective members.

62. The key legal issues – whether (a) the wait time and other non-compensated time such as charging vehicles is deemed hours worked such that it is compensable time, (b) hours over 40 in a workweek are overtime and the appropriate overtime premium is owed, (c) Rider-paid gratuities were fully included in Drivers pay, and (d) the manner in which to calculate the regular rate for Drivers – are the same for all Collective members.

## RULE 23 WAGE CLASS ACTION ALLEGATIONS

63. Plaintiff re-alleges and incorporates paragraphs 1through 52 as if fully set forth herein.

64. Pursuant to Federal Rules of Civil Procedure 23(b)(2) and (b)(3), Plaintiff brings this action individually and on behalf of all similarly situated individuals who are current and former employees of Defendant within four years prior to the commencement of this action, based on the statute of limitation for breach of contract in Georgia.

65. The proposed Rule 23 Class is defined as:

> All persons who worked for Defendant as Drivers of Defendant's fleet of vehicles at any time within four years prior to the commencement of this action and received **compensation through Defendant's**

**centralized payment platform during that period** (the "Wage Class").

66. Defendant did not pay Plaintiff or other members of the Wage Class the difference between minimum wage and the agreed upon hourly rate for all hours worked.

67. During all relevant times, Defendant retained, diverted, or failed to remit the full amount of Rider-paid gratuities that were made through the rideshare application to Plaintiff and purported members of the Wage Class which were meant for and promised to Drivers.

68. The individuals in the proposed Wage Class are so numerous that joinder of all members is impracticable. While the precise number of class members has not been determined at this time, upon information and belief, Defendant has employed approximately 200 Drivers during the class period.

69. There is a well-defined community of interest among the Wage Class members and common questions of law and fact predominate in this action over any questions affecting individual class members.

70. These common legal and factual questions include, but are not limited to:

(a) Whether Defendant is liable for time employees spent waiting for Defendant to have EVs available for use;

(b) Whether Defendant is liable for employee's time charging Defendant's EVs;

(c) The extent Defendant retained a portion of Rider-paid gratuities instead of paying them to Drivers;

(d) The extent Defendant's policy and practice of failing to record and credit all hours employees worked affected Drivers' employer-sponsored benefit eligibility; and

(e) Whether Defendant's non-payment of wages for all time worked amounted to a breach of contract.

71. Plaintiff's claims are typical of those of the Class in that she and all other Class members suffered damages as direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies and practices as applied to all Wage Class members. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Wage Class members' claims and her legal theories are the same as those for purported Wage Class members

72. Plaintiff fairly and adequately represents the interests of the Wage Class, will be able to continue doing so, and has retained counsel highly experienced in wage and hour and related class litigation.

73. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Class.

74. The questions of law and fact common to the Wage Class predominate over any questions solely affecting individual members of the proposed Wage Class.

75. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, inter alia, it is economically infeasible for Wage Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for some individuals along with the fear of reprisal. Prosecution of this case as a class action will also eliminate the possibility of duplicative lawsuits being filed in both state and federal courts and conflicting rulings.

76. This case will be manageable as a class action. Plaintiff and her counsel know of no unusual difficulties in this case.

77. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. S*hady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co*., 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

78. Because Defendant acted and refused to act in ways that apply generally to the Class and the legal theories at issue are common among purported Class members, class certification pursuant to Rule 23(b)(2) is appropriate.

## RULE 23 WARN CLASS ACTION ALLEGATIONS

79. Plaintiff re-alleges and incorporates paragraphs 1 through 26 and 41 through 52 as if fully set forth herein.

80. Plaintiff brings this action pursuant to 29 U.S.C. § 2104(a)(5) on her own behalf and on behalf of:

> All persons employed by Defendant at its 1130 Oakleigh Drive, East Point, Georgia location (the "Worksite") who received a notice that the Worksite was closed but that their employment would continue until April10, 2026, despite the Worksite closing on February 10, 2026 (the "WARN Class").

81. The individuals in the proposed WARN Class are so numerous that joinder of all members is impracticable. Based on Defendant's representations to government agencies, Defendant sent 83 employees the Notice and Release on February 10, 2026.

82. There is a well-defined community of interest among the WARN Class members and common questions of law and fact predominate in this action over any questions affecting individual WARN Class members

83. These common legal and factual questions include, but are not limited to:

(a) Whether Defendant ordered the Worksite closed and/or caused a mass layoff;

(b) Whether Defendant was an "employer" under the WARN Act;

(c) Whether WARN Class members suffered an employment loss;

(d) Whether Defendant provided notice compliant with 29 U.S.C. § 2102;

(e) Whether any WARN Act exception applies;

(f) The number of days of any WARN Act violation; and

(g) The amount of back pay and benefits Defendant owes.

84. Plaintiff's claims are typical of those of the WARN Class in that she and all other WARN Class members suffered damages as direct and proximate result of the Defendant's common and systemic termination and defective notice. Plaintiff's claims arise from the same termination policies, practices, promises and course of conduct as all other WARN Class members' claims and her legal theories are the same as those for purported WARN Class members.

85. Plaintiff fairly and adequately represents the interests of the WARN Class, will be able to continue doing so, and has retained counsel experienced with the WARN ACT and class litigation.

86. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the WARN Class.

87. The questions of law and fact common to the WARN Class predominate over any questions solely affecting individual members of the proposed WARN Class.

88. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, inter alia, it is economically infeasible for WARN Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for some individuals along with the fear of reprisal. Prosecution of this case as a WARN Class will eliminate the possibility of duplicative lawsuits being filed in both state and federal courts with conflicting rulings.

89. This case will be manageable as a class action. WARN Class members are easily identifiable, were subject to the same conduct that is alleged to constitute a WARN Act violation, and subject to the same damage calculation. Plaintiff and her counsel know of no unusual difficulties in this case.

**COUNT I**
**(29 USC § 216(b) Collective Action)**
**VIOLATION OF THE FLSA – MINIMUM WAGE & OVERTIME**

90. Plaintiffs re-allege and incorporate by reference the above paragraphs 53 through 62 as if fully set forth herein.

91. Defendant is an enterprise engaged in commerce or in the production of goods for commerce, as defined by 29 U.S.C. § 203(s)(1).

92. Defendant suffered or permitted the Plaintiff and members of the proposed Collective to work the hours worked within the meaning of 29 U.S.C. § 203(g).

93. At all times relevant to this action, Plaintiff and members of the proposed Collective were "employees" of Defendant within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

94. During all times relevant to this action, Defendant routinely required Plaintiff and members of the proposed Collective to wait at the worksite before a vehicle was available for their use and did not pay Drivers for wait time or count the time as compensable for minimum wage or overtime purposes.

95. During all times relevant to this action, Defendant routinely required Plaintiff and members of the proposed Collective to charge EVs during their shift and did not pay drivers for this time or count the time as compensable for minimum wage or overtime purposes.

96. Defendant also did not pay any amount for the time drivers spent driving without a passenger including back to the Worksite after dropping off the last passenger or count such time as compensable in computing total hours worked each workweek.

97. In workweeks where Plaintiff and other Collective members' total hours worked exceeded 40 hours, Defendant did not pay Plaintiff or purported Collective members 1.5 times each employee's regular rate. 29 U.S.C. § 207.

98. Defendant acted willfully or with reckless disregard as to its obligation to pay drivers a minimum hourly wage for all hours worked and proper overtime. Defendant has the data necessary to calculate and properly pay for all hours and knew it was not paying its drivers for all hours worked or properly calculating overtime.

99. Defendant's failure to pay members of the proposed Collective the federally mandated minimum wage and overtime premiums results from Defendant's generally applicable payroll policies and practices and does not depend on the personal circumstances of individual members of the proposed Collective.

100. Defendant's conduct, as alleged above, was widespread, repetitious, and consistent among members of the proposed Collective.

101. As a result of Defendants' conduct, Plaintiff and purported Collective members incurred lost wages in an amount to be determined at trial, along with liquidated damages, attorney's fees, and costs of litigation.

102. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages including

overtime plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

**COUNT II**
**(Rule 23 Wage Class Action)**
**BREACH OF CONTRACT**

103. Plaintiff re-alleges and incorporates by reference paragraphs 63 through 78 as if fully set forth herein.

104. At all relevant times, Defendant promised Drivers full-time work that qualified them for benefits provided by Defendant.

105. At all relevant times, Defendant promised Drivers to pay them for each hour they worked at a pre-established (contractual) rate.

106. Plaintiff and purported Wage Class members' contractual rate and hours are identified in an offer letter, paystubs and/or other records that Defendant prepared and maintains in its regular course of business.

107. Plaintiff and purported Wage Class members were entitled to all Rider-paid gratuities, but Defendant withheld a portion of those tips.

108. Defendant failed to pay Plaintiff and purported Wage Class members all compensation promised including not paying the full hourly rate for all hours worked and retaining part of their tips.

109. Plaintiff and the purported Wage Class members performed all of their required duties under the employment agreement.

110. By not paying Plaintiff and purported Wage Class members all compensation promised, Defendant systematically breached its contracts with Plaintiff and purported Wage Class members.

111. Remedies under the FLSA for the Plaintiff and Wage Class members are inadequate during workweeks with total hours under 40 as Defendant agreed to pay an hourly rate more than the federally mandated minimum wage of $7.25 per hour (i.e., pure "gap time" claims).

112. Based on Defendant's systemic payroll practice of not paying for mandatory wait time for vehicles or between rides, unpaid return drive time to the Worksite, time spent charging EVs, and retaining, diverting, or failing to remit the full amount of Rider-paid gratuities to Plaintiff and Wage Class members, Defendant failed to pay Drivers the compensation and benefits promised.

113. As a direct and proximate result of Defendant's breaches of the contracts, Drivers within the Wage Class have been damaged by not receiving all compensation and benefits Defendant promised to pay, in an amount to be determined at trial.

114. These claims are appropriate for class certification under Rules 23(b)(2) and (b)(3) because the facts giving rise to the alleged breaches and the contractual law to be applied are the same for all Wage Class members, the common questions of law and fact predominate over any question affecting only

individuals and a class action is the best way to fairly and efficiently adjudicate the controversy.

**COUNT III**
**(Rule 23 WARN Class Action)**
**BREACH OF CONTRACT**

115. Plaintiff re-alleges and incorporates by reference paragraphs 79 through 889 as if fully set forth herein.

116. Defendant was required to provide at least 60 days' written notice prior to eliminating all Drivers jobs, which occurred when Defendant ordered the Worksite closed.

117. Defendant failed to provide such notice.

118. Defendant provided Drivers notice that the Worksite would be closed and their employment would be terminated the same day that the Worksite was closed.

119. As a result, pursuant to 29 U.S.C. § 2104(a), Defendant is liable to Plaintiff and the WARN Class members for:

(a) Back pay for each day of violation, up to 60 days or half the number of days an employee was employed, whichever is less;

(b) The value of lost benefits, including medical, dental, vision, retirement contributions, and other employment benefits;

(c) Prejudgment interest; and

(d) Reasonable attorneys' fees and costs.

120. These claims are appropriate for class certification under Rules 23(b)(2) and (b)(3) because the facts giving rise to the alleged breaches and the contractual law to be applied are the same for all WARN Class members, the common questions of law and fact predominate over any question affecting only individuals and a class action is the best way to fairly and efficiently adjudicate the controversy.

## JURY DEMAND

Plaintiff and those similarly situated request a trial by jury on all applicable claims.

## RELIEF REQUESTED

WHEREFORE, Plaintiff, individually and on behalf of others similarly situated, prays that this Court grant relief in their favor, and against Defendant, as follows:

(a) An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA Collective claims set forth in Count I;

(b) An Order certifying this action as a class action (for the Wage Class) pursuant to Rules 23(b)(2) and (b)(3) of the Federal Rules of Civil

Procedure with respect to Plaintiff's breach of contract claim (Count II);

(c) An Order certifying this action as a class action (for the WARN Class) pursuant to 29 U.S.C. § 2104(a)(5) and to Rules 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure with respect to Plaintiff's breach of WARN Act (Count III);

(d) An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names, addresses, emails, and phone numbers of all potential Collective, Wage Class, and WARN Class members, and permitting Plaintiff to send notice of this action to all those similarly situated by mail, email and text to apprise them of their rights by law to join and participate in this lawsuit;

(e) An Order designating Plaintiff as the representative of the proposed FLSA Collective, the Wage Class, and the WARN Class, and undersigned counsel as Collective, Wage Class, and WARN Class counsel;

(f) An Order declaring Defendant violated the minimum wage and overtime provisions of the FLSA and did so willfully;

(g) An Order declaring Defendant breached its agreements with Plaintiff and the members of the Wage Class by failing to pay them for all compensation required;

(h) Judgment against Defendant in an amount equal to Plaintiff's and all opt-in Plaintiffs' unpaid back wages for a period of three years and an equal amount in liquidated damages in Count I;

(i) Judgment against Defendant in an amount equal to Plaintiff's and all Wage Class members' unpaid promised compensation for a period of four years, pre-judgment interest and other consequential damages from Defendant's failure to pay agreed upon compensation on Count II;

(j) Judgment against Defendant in an amount equal to back pay for each day of violation up to 60 days (or half the number of days an employee was employed, whichever is less), the value of lost benefits, and pre-judgment interest and other consequential damages from Defendant's failure on Count III;

(k) An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing and pursuing this action as provided by statute; and

(l) An Order awarding such other and further relief as the Court deems just and proper.

Respectfully submitted this 2nd day of March, 2026,

/s/Dane Steffenson
DANE STEFFENSON
GA Bar no. 677780
Dane@TheDaneLawFirm.com

DANE LAW LLC
3575 Piedmont Rd.
Suite L120
Atlanta, GA 30305
(404) 919-9719

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing **Amended Complaint** with the Clerk of Court using the CM/ECF system which will automatically send email notification of the filing to all attorneys of record.

This 2nd day of March 2026.

*/s/ Dane Steffenson*
DANE STEFFENSON
GA Bar No. 677780
Dane@TheDaneLawFirm.com

**DANE LAW LLC**
3575 Piedmont Road
Suite L120
Atlanta, GA 30305
(404) 919-9719

*Attorney for Plaintiffs*